[No. 1348.]

## CHARLES LA NORRIS *v.* THE STATE.

1. OCCUPATION TAX.—Article 110 of the Penal Code provides that "any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes so due, and not more than double that sum."

2. SAME—SELLING LIQUORS.—The act of March 11, 1881, imposes upon persons engaged in the business of selling spirituous liquors in quantities less than one quart an annual tax of three hundred dollars, and empowers the commissioners' court of each county to levy and collect from such persons one-half the amount of the tax levied by the State.

3. SAME—CASE STATED.—The information charged the appellant with following the occupation of selling intoxicating liquors in quantities less than one quart without having paid the tax levied upon such occupation.   The testimony showed that he was a conductor in charge of a Pullman Palace Car, on which there was a bar at which drinks were retailed.   As such conductor he sold two drinks at twenty cents each.   The

Q

defense contended that although within the express letter of the law, the business of retailing liquors on the cars to the passengers did not come within the spirit or intent of the law. *Held*, that the plea is futile, and that the vending of liquors in such mode without license is as much an offense as though vended without license in the ordinary mode.

4. SAME.—An employe who follows the business of vending inhibited liquors when the occupation tax has not been paid is subject to prosecution equally with his principal.

5. CHARGE OF THE COURT instructed the jury to convict if they found from the evidence that the defendant "was guilty of selling spirituous liquors," etc. The offense defined by the statute and that charged in the information is "engaging in the business of selling spirituous liquors," etc., and the instruction was erroneous.

6. SAME.—Instruction to the jury that "you will give defendant the benefit of all reasonable doubt, and if you believe from the evidence that he is not guilty, you will so say by your verdict," is erroneous. The jury, in order to acquit, is not required to believe that the defendant is not guilty, but must presume his innocence until his guilt has been established beyond all reasonable doubt.

APPEAL from the County Court of Wood. Tried below before the Hon. W. J. Jones, County Judge.

This was a prosecution under Article 110 of the Penal Code, against the defendant for engaging in the sale of spirituous liquors in quantities less than one quart, without first paying the tax therefor, etc. The trial resulted in the conviction of the defendant, and his punishment was affixed by the jury at a fine of four hundred and fifty dollars. The opinion summarizes the whole of the evidence.

*Foster & Wilkinson,* for the appellant. It is submitted that our laws in regard to the license of retail liquor dealers were never intended to apply to cases like the present. The license law of 1881 (Acts Seventeenth Legislature, p. 21) is primarily not a revenue law, but a police regulation. It can properly be applied only to local institutions. All legislation on this subject must be construed with reference to the changes which the last half century has made in the habits of life of our people. (*Higgins* v. *Rinker*, 47 Texas, 401.) The business of the hotel car companies does not deal with local affairs. It is a branch of interstate commerce with which it is doubtful if local regulations can lawfully interfere. It is, at any rate, certain that they ought not to so interfere, and will not be presumed to have so intended unless it is plainly declared. The necessities of modern life de-

mand a means of transportation by which women and children and invalids as well as strong men may travel over thousands of miles of wilderness surrounded by something approximating the comforts of home. This kind of transportation the dining room or hotel car companies have attempted to supply. They are patronized almost exclusively by persons embarked in long journeys, and for whom, meanwhile, State and municipal lines are practically effaced. They fly by day and night over States, rivers and mountain chains whose names even are almost unknown to the travelers. The passengers could not be more completely removed from the local affairs and interests of the municipalities through which they pass if they were borne above them in balloons, and it would be no more absurd, either in law or policy, to apply the regulations we are considering to the latter than to the former means of transit.

The long practiced and universal sale of liquors upon steamboats, where, though such sales must necessarily be continually made within the limits of local jurisdiction, no attempt, so far as we know, has ever been made to apply local police or revenue laws of this character to the business, is a practical construction by the whole country on a case indistinguishable in principle from this. The same privilege has been exercised by the hotel cars since their first introduction, without any objection.

Custom is the best interpreter of laws. (Sedgwick on Statutory and Constitutional Law, 255.)

It is freely conceded that the argument *ab inconvenienti* cannot prevail over a clearly expressed intention to subject this business to the regulations sought to be enforced; but a careful examination of the law shows quite the contrary intention. From sections 3 and 5 of the law it will be seen that there is no way in which defendant or the company employing him could have taken out the required license without paying the State tax as many times as there were counties through which the car ran. By the fourth section they were required to give bond, under heavy penalty, not to permit any minor under the age of twenty-one years upon the premises, an enactment evidently not designed for application to a common carrier of passengers. The whole tenor of the law shows that its application to such an institution as a steamboat or hotel car was never contemplated by the legislators. (Acts of 1881, ch. 31, p. 21, and ch. 101, p. 112.)

On the other hand, we submit that the taxation and regulation of the business in question is covered by an entirely different

law. By the Act of 1881, Chapter 55, Section 3, p. 58 (amended at special session in 1882), an occupation tax was imposed upon dining room cars so onerous that its reduction was necessary at the special session following, in order that the whole enterprise might not be driven from the State. Statutes in *pari materia* are to be construed together. (Sedgwick, Statutory and Constitutional Law, p. 247.)

The evidence shows, and it is a fact that the court must judicially recognize (*Stearnes* v. *The State*, 21 Texas, 692), that at the time this law licensing these cars was passed the business of running dining room or, as commonly called, hotel cars, as carried on in Texas and almost every other State in the Union, embraced the furnishing passengers not only with seats by day and beds at night, but with food and drink, including spirituous liquors for such as required them. By the term dining room car the legislators meant an institution such as was then well known; such as they had traveled on, eaten on and drank on. Did they not by imposing this tax mean to license the running and conducting a dining room car in just the way it was then universally run and conducted? See the remarks of Judge Roberts in *Scott* v. *The State*, 25 Texas Sup., 172.

A statute should be construed with reference to the habits of business prevalent among the people to whom it applies. The court in interpreting the meaning and objects of a law should take into consideration the existing facts to which the law is intended to be applied, whether they consist of the ordinary acts of persons or the habits of business relating to the subject matter and embraced within the law. (*Higgins* v. *Rinker*, 47 Texas, 398, 401; *Stearnes* v. *The State*, 21 Texas, 692.)

The only answers we have heard made to the foregoing propositions are that if a dining room car is to be exempt because a transitory and not a local concern, any one could load a barrel of whisky on a wagon and peddle it out in evasion of the law. To this we reply that there is no danger from the precedent of acquital in this case, because a dining room car is an institution *sui generis* which would furnish a precedent for dealing with no other concern unless it were a steamboat engaged in passenger transportation. The essential difference is that it deals, not with citizens of the locality where the police regulations apply, but with people who for the time being know nothing of State or municipal boundaries. There is no pretense of an evasion in

this case, and defendant ought not to be improperly convicted because others might evade the law.

At least, whether it was an evasion of the law or not was the question of fact which, if the evidence warranted it, ought to have been submitted to the jury under appropriate instructions. (*Commonwealth* v. *Smith,* 102 Mass., 144.)

We have also been told that the considerations which we have urged cannot be permitted to override the literal import of a statute. This is a narrow view of the law. Such a rule of construction might be applicable to civil statutes, but an act to be criminally punishable must come not only within the literal terms but within the spirit and objects of the law also.

(Bishop on Statutory Crimes, secs. 232 to 235, 238 and note 2. *Russell* v. *Farquhar,* 55 Texas, 359; *McGaffin* v. *Cohoes,* 74 N. Y., 387.)

But we do not concede that defendant's acts bring either him or his employer within the letter of the statute. What he has done is obviously not an entering upon or pursuing an occupation within the meaning of the law. It is a mere incident to another business, the care of passengers in transit. These passengers are generally to be transported over many miles of uninhabited wilderness. They require from the company undertaking their transportation a variety of services which at home would be furnished there by perhaps a half dozen different dealers or employes. Is the carrier to be held to have entered upon all these occupations which are the mere necessary incidents to his main occupation, itself also taxed?

It is conceded that the mere fact that liquor selling is pursued in connection with some other occupation does not exempt from the law, and that any mere colorable evasion would be punishable; but, admitting all this, we submit that the acts of defendant are not such as in the ordinary use of language could fairly be called an entering upon an occupation.

(*Viser & Carson* v. *The State,* 10 Texas Ct. App., 89; *Scott* v. *The State,* 25 Texas Sup., 172; *Seim* v. *The State,* 39 Am., 419; *Commonwealth* v. *Smith,* 102 Mass., 144.)

The foregoing views were fully presented in instructions asked by defendant, the refusal of which was assigned as error.

The defendant was a mere employe. As such he could not be punished criminally for the failure of his employer to pay the license tax. (*Archer* v. *The State,* 10 Texas Ct. App., 482; *White* v. *The State,* 11 Texas Ct. App., 476.) In *Tardiff* v. *The State,*

23 Texas, 170, the penalty was by statute imposed on all who should sell or be in any way concerned in selling, and the decision is based on the peculiar language of the statute. (Pas. Dig., Arts. 2075 and 2081.) There is a clear distinction between statutes punishing the act of selling and those taxing the pursuing an occupation.

(*Viser & Carson* v. *The State*, 10 Texas Ct. App., 89; *Moore* v. *The State*, 16 Ala., 411; *Archer* v. *The State*, 10 Texas Ct. App., 482.)

If every employe of every person or corporation pursuing a taxed occupation is to be held liable for the failure of his employer to pay the tax, it opens up a stupendous field of crime hitherto undreamed of. No such burden should be imposed, and least of all upon the myriad of employes of great corporations. That an employe who knowingly promotes the unlawful act of his employer should be punished is right. (16 Me., 241.) But to say that he must see at his peril that the master has paid the tax is unnecessary, impracticable and wholly unreasonable. He should not be held to presume that his employer intends to violate the law. The presumption should be that he has complied with it. The present case presents no necessity for any modification of the general rule of *respondeat superior* laid down in *White* v. *The State*. The employer has a general office in the State and ample property out of which the State can enforce the collection of all just demands against it.

The jury were instructed to find defendant guilty on proof of the act of selling. This was clearly error, and for a similar misdirection the court reversed *Viser & Carson* v. *The State*, 10 Texas Ct. App., 89. The charge was specially and pointedly excepted to at the time. It took away from the jury the whole question of whether or not the defendant had engaged in the occupation, which was the gist of the offense charged, and on which instructions properly presenting the law were asked by defendant.

An erroneous charge excepted to at the time is ground for reversal, however slightly it may have prejudiced the defendant. (*McGrew* v. *The State*, 10 Texas Ct. App., 539.) And so even whether prejudicial or not. (*Mace* v. *The State*, 9 Texas Ct. App., 110; *Vincent* v. *The State*, 9 Texas Ct. App., 303; *Whaley* v. *The State*, 9 Texas Ct. App., 305.)

The jury were instructed to find defendant not guilty only in case the evidence established his innocence. This was palpable

error. No issue as to defendant's innocence should have been submitted to them; nor was the error cured by directing them to give him the benefit of a reasonable doubt. Numerous cases have been reversed for precisely similar errors. (*Munden* v. *The State*, 37 Texas, 353; *Smith* v. *The State*, 9 Texas Ct. App., 150; *Robertson* v. *The State*, 9 Texas Ct. App., 209; *McMillan* v. *The State*, 7 Texas Ct. App., 142; *Blocker* v. *The State*, 9 Texas Ct. App., 279; *Wallace* v. *The State*, 9 Texas Ct. App., 299; *Estep* v. *The State*, 9 Texas Ct. App., 370; *Haynes* v. *The State*, 10 Texas Ct. App., 480.)

There was no proof of the failure of the defendant or the Pullman Palace Car Company to pay the tax. The county clerk testified that he had issued no license to defendant, but there was no evidence whatever as to whether taxes had been paid by, or license issued to, the company. As to this, it is conceded that the burden of producing his own license, if he wished to justify under it, is upon the defendant. But, though the production of the license would be proof of the payment of the tax, the fact that there was no license would afford no presumption that the tax had not been paid, since a great deal more than the payment of taxes was required in order to get license. (Acts of 1881, pp. 21 and 22.) We do not understand how the mere tax receipt is now admissible in evidence at all, without proof of execution, since it no longer constitutes license.

But when a mere employe is prosecuted for his employer's failure to pay the tax, the hardship of holding him criminally liable at all is great enough without the additional absurdity of presuming his guilt from his failure to produce a document which cannot be supposed to be in his possession or under his control. The principal can, with reason, be held to produce his license or endure the presumption that he has none. It was given him that he might always and anywhere be able to show his authority. But no such rule can be applied to the employe. He has no control over his employer's license, and no peculiar opportunities for knowing of its existence. No stronger illustration by way of *reductio ad absurdum* can be given than the present case, where a man is convicted as a criminal because he does not produce a State tax receipt, which, if it exists, might be equally required at the same time by a hundred different employes of the same company in fifty different counties of the State, and be properly in the hands of a non-resident who was

under no obligation to produce it, and who could not be compelled to do so by any process of the court.

*H. Chilton,* Assistant Attorney General, for the State.   I.   To hold that the employe (conductor) could not be prosecuted, would simply be absurd, unless there were limitations to the doctrine.   Every saloon keeper in Texas could have his business incorporated, and defy criminal remedies for non-payment of tax.

"Any *person* who shall follow," etc.   This refers clearly to natural, not artificial *persons.*   According to defendant's theory, the conductor can throw the burden on his superiors, and his superiors on their superiors, and so in upward gradation until the remedy ran out into the civil liability of the corporation.

There is no parallel between Archer's case, and others cited, and this one.   A corporation only acts through agents.   Hence, so far as concerns criminal actions, the agents are the corporation.   The clerk or employe of a private individual does not represent him so that process could be served on him for the principal, but it is otherwise with incorporated companies.   (Art. 1223, Revised Satutes.)

The employe was properly prosecuted in this case.   (Article 382 Penal Code; *Needham* v. *The State,* 19 Texas, 336; *Tardiff* v. *The State,* 23 Texas, 169; *Cochran* v. *The State,* 26 Texas, 678; *Schmidt* v. *The State,* 2 Texas Ct. App., 196.)

II.   The tax on dining room cars or sleeping cars did not cover liquor selling, any more than a tax on a hotel would cover barrooms, which are so universally to be found around the precincts of city hotels.   In cases where an incidental or usual business is intended to be permitted in connection with one more extensive, we find exceptions or provisions in the statute to sanction it. For example, the tax on attorneys covers any business as "land agents" they may transact.   (Revised Stats., Article 4665.)   So a merchant may be a "cotton broker" without paying additional taxes.   (Rev. Stats., Article 4665.)   So a merchant may sell sewing machines or clocks.   (Rev. Stats., Article 4665.)

III.   It is true that a single sale may or may not be sufficient. If the selling is a business, then a single sale or no sale may be ample.   A sale is a mere item of evidence.   The point made that there was only a single sale, or that the court permitted the jury to convict on a case of "selling" rather than "pursuing

the occupation," is immaterial. The evidence of defendant removed any such question from the domain of controversy.

IV. The word "*drink*" has a meaning in common language and acceptation, sufficient to designate the quantity sold or offered to be sold.

V. Under the present law the old decisions about a "failure to pay the tax" constituting the offense, and not a "failure to obtain the license," are inapplicable. (*Viser & Carson* v. *The State*, 10 Texas Ct. App., 86.)

VI. The conviction being only based on the State tax, it is well settled that a failure of proof as to the county tax will not harm the conviction. (*Rowland* v. *The State*, 12 Texas Ct. App., 418; *White* v. *The State*, 11 Texas Ct. App., 478; *Crews* v. *The State*, 10 Texas Ct. App., 292.)

WILLSON, J. Article 110 of the Penal Code provides as follows: "Any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes so due, and not more than double that sum."

The act of March 11, 1881 (Acts Seventeenth Legislature, chap. 34, p. 21), imposes upon persons engaged in the business of selling spirituous liquors in quantities less than one quart, an annual tax of three hundred dollars, and empowers the commissioners' court of each county to levy and collect from such persons one-half the amount of the tax levied by the State. (Secs. 1 and 2 of the act.)

The defendant was prosecuted for a violation of Article 110 of the Penal Code, above quoted, and was convicted and fined four hundred and fifty dollars. It was proved that he was an employe of the Pullman Palace Car Company; that he had charge of a palace car belonging to the company, which car was used for transporting passengers over the line of railroad, and in this car such passengers were furnished with sleeping accommodations, and with food and drink. In this car there was a small bar supplied with spirituous liquors, and such liquors were sold from this bar to passengers calling for them. The defendant sold two drinks from this bar to two of the passengers on the car, while it was in Wood county, at the price of twenty cents for each drink. It was not proved or attempted to be proved that the defendant, or his employer, the Pullman Palace Car

Company, had paid the occupation tax levied upon retail liquor dealers. It sufficiently appears from the evidence that the business of retailing spirituous liquors was being engaged in by the defendant, upon the car, and that such business had, for some time prior thereto, been carried on in this State, and elsewhere, upon the cars of the company while in transit.

It has been ably and ingeniously argued by counsel for appellant that it is no violation of law to engage in the business of retailing spirituous liquors upon these cars while in transit, without paying the tax, etc. They argue that the business of retailing liquors upon these cars to the passengers on the cars, is not within the mischief intended to be prevented by the Legislature, and is not within the spirit and intent of the law, although it may come within the express letter of the law. We think it is clearly within the letter of the law, and we can see no good reason why we should not hold it to be within the spirit and intent of the law.

The law is operative throughout the limits of the State, and operates upon all alike. It makes no distinction between persons, whether they be traveling or stationary, whether they be the owners or conductors of a palace car, or the driver of a hack or other vehicle. Whenever one of these palace cars crosses the line into this State it is within the jurisdiction of the laws of this State, and all persons who are transported by it are subject to those laws, and as much bound to obey them as any citizen of the State. We could elaborate our views upon this question, and advance many and cogent reasons for holding as we do, but we think it sufficient for us to say that neither the letter nor the spirit of the law exempts the Pullman Palace Car Company, or any other corporation or person, from its operation,—and that it is as much a violation of law to engage in the business of retailing spirituous liquors, without paying the occupation tax, upon a car traveling over a railroad, as it is to carry on that business in the usual mode.

Appellant also claims that as he was only an *employe* of the Palace Car Company, who were the proprietors of the business, he is not subject to this prosecution. We think he was "a person engaged in the business," in the meaning of the statute. To hold otherwise would render the law practically ineffectual in all cases where the proprietor or owner of such business was beyond the jurisdiction of the courts of this State, as in this case. A

non-resident could, through agents and employes, violate this law with impunity.

Upon the trial in the court below, the court charged the jury, among other things, as follows: "If you believe from the evidence that the defendant is guilty of selling spirituous liquors in quantities less than a quart, in Wood county, as charged, you will find him guilty," etc. This charge was excepted to by defendant at the time. We think the charge is erroneous. The offense charged in the information is that of "engaging in the business" of selling spirituous liquors, etc. A person might be guilty of selling spirituous liquors, and yet not be engaging in that business within the meaning of this law. The charge made the guilt of the defendant depend upon the sale alone, when in fact it depended upon whether or not he had engaged in the business of selling, etc.

Another portion of the charge is as follows: "You will give the defendant the benefit of all reasonable doubt, and if you believe from the evidence that he is not guilty, you will so say by your verdict." This was also excepted to by the defendant at the time it was given. This charge is incorrect. The jury are not required in any criminal case, in order to acquit a defendant, to believe that he is not guilty. To believe that he is not guilty is to believe that he is innocent. The correct rule is that the jury must presume the defendant to be innocent until his guilt has been established by legal evidence to the exclusion of any reasonable doubt. (Munden v. The State, 37 Texas, 353; Smith v. The State, 9 Texas Ct. App., 150; Robertson v. The State, Id., 209; Blocker v. The State, Id., 279; Wallace v. The State, Id., 299; Estep v. The State, Id., 370; Haynes v. The State, 10 Texas Ct. App., 480.)

These erroneous charges having been promptly excepted to at the time they were given, and being presented in this court by bill of exception, the law requires a reversal of the judgment: (Code Crim. Proc., Arts. 677–685.)

There are other questions presented in this case which we think are not of sufficient importance to be discussed. We have discovered no errors in the proceedings, except those above noticed in the charge of the court, and for which errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 18, 1882.